**Rudolfo GODOY, Plaintiff and Appellant,**

v.

**FARMERS INSURANCE GROUP, Mid-Century Insurance Company, Prematic Service Corporation, and John L. May, Defendants and Respondent.**

No. 870390–CA.

Court of Appeals of Utah.

Aug. 12, 1988.

---

Denton M. Hatch (argued), Christensen, Jensen & Powell, Salt Lake City, for appellant.

Linda L.W. Roth (argued), Hanson, Dunn, Epperson & Smith, Salt Lake City, for defendant and respondent, Farmer's Ins. Group.

Aaron Alma Nelson, Bayle, Hanson, Nelson & Chipman, Salt Lake City, for respondents Mid–Century Ins. Co. and Prematic Service Corp.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Plaintiff Godoy appeals from the grant of summary judgment in favor of defendant Mid–Century Insurance Company. We reverse.

### I.  FACTS

Godoy entered into an automobile liability insurance contract with Mid–Century, a member of Farmers Insurance Group. Mid-Century's billing was handled by Prematic Service Corporation. The effective date of the policy was November 7, 1983 and the stated expiration date was May 15, 1984. Premium installments were to be made by Godoy each month. Godoy made an initial payment of twice the usual monthly amount so that coverage would continue one additional month in the event of inadvertent nonpayment of an installment. No premium was received from Godoy for April 1984, which was apparently covered by his initial deposit.

Prematic then allegedly mailed Godoy a "Notice of Cancellation—Nonpayment of Premium," which stated that the policy would terminate on May 15, 1984 if full payment was not received. Godoy's wife allegedly purchased and forwarded a money order for payment of the premium. Mid–Century contends it never received the payment.

On May 17, 1984, Godoy was involved in an automobile accident with John L. May, an uninsured motorist. Godoy applied for no-fault personal injury benefits and uninsured motorist benefits on June 15, 1984. Mid–Century accepted the claim and continued to pay Godoy's medical bills and lost wages for some three months. On September 18, 1984, the local office of Mid–Century says it became aware that Godoy's policy had expired for nonpayment of premium on May 15, 1985, two days before the accident. Mid–Century immediately ceased making payments to Godoy and stopped payment on the last check it had mailed to him. On October 18, Mid–Century denied Godoy's uninsured motorist claim, taking the position the policy had been cancelled on May 15, 1984. Mid–Century subsequently demanded repayment from Godoy of the funds it had paid him for medical expenses and lost wages.

Godoy brought this action against Farmers, Mid–Century, Prematic, and May alleging breach of contract, estoppel, waiver, and bad faith denial of an insurance claim. The court granted a motion to dismiss as to Farmers Insurance Group. Godoy moved for partial summary judgment, seeking a declaration of coverage but reserving the issues of bad faith and damages for trial. Mid–Century filed a cross-motion for summary judgment, claiming that Godoy's policy had expired on May 15, 1984 for nonpayment of premium and that Godoy did not have insurance coverage at the time of the accident. The court granted Mid–Century's motion and denied Godoy's. On appeal, Godoy contends the court erred in granting Mid–Century's motion because there were material issues of fact concerning whether he had insurance coverage on the date of the accident.

While we do not have the benefit of a transcript of the hearing on the motions for summary judgment [1] nor a written explanation of the court's rationale, it is reasonably clear that the court granted Mid–Century's motion because it accepted the argument that Godoy's policy expired for nonpayment of premium on May 15, 1984 and was not timely renewed. We must accordingly determine whether, as a matter of law, the undisputed facts establish that Godoy did not have insurance coverage at the time of the accident.

## II. CANCELLATION AND RENEWAL

Godoy claims that the policy could not automatically *expire* on May 15, 1984. Rather, he was entitled to notice from Mid–Century prior to *cancellation* of the insurance policy. Conversely, Mid–Century argues that it was not required to give notice of cancellation because Godoy's late or missing payment was actually a "renewal" payment, which, upon nonpayment, resulted in automatic termination of the policy.

■ We recently acknowledged in this regard that, at least under the statutory scheme previously in effect, premium installment payments due during the policy term and renewal payments due at the end of the policy term are on different legal footings. *Clarke v. American Concept Ins. Co.,* 758 P.2d 470, 474 (Utah Ct.App. 1988).[2] In order to *cancel* an insurance policy for nonpayment of premium prior to the end of the policy's term, the insurer had to give the insured at least ten days notice, accompanied by the reason for cancellation. Utah Code Ann. § 31–41–16(1) (1974) (repealed, 1985 Utah Laws ch. 242, § 58). However, this requirement did not apply to the nonrenewal of a policy which had simply expired automatically at the end of its term. *See* Utah Code Ann. 31–41–16(3) (1974) (repealed, 1985 Utah Laws ch. 242, § 58).

---

1. "Although consistently making a record of all proceedings imposes a greater burden on the trial court and court reporters, it is impossible for an appellate court to review what may ultimately prove to be important proceedings when no record of them has been made." *Briggs v. Holcomb,* 740 P.2d 281, 283 (Utah Ct. App.1987).

2. This dispute, like the one in *Clarke,* is governed by the statutory scheme in effect prior to recodification of the insurance code in 1985, effective July 1, 1986. *See* 1985 Utah Laws ch. 242, § 58. We noted in *Clarke* that the subjects of former §§ 31–41–15 and –16, also relevant in this case, are now treated in Utah Code Ann. § 31A–21–303 (1987). 758 P.2d at 473 n. 2.

While the policy in issue listed the effective date as November 7, 1983 and the expiration date as May 15, 1984, such a provision was ineffective under then-existing law, which required policies to be written for at least one year. The applicable provision provided, in relevant part, as follows:

> [A]ny policy with a policy period or term of less than twelve months shall for the purpose of this act be considered as if written for a policy period or term of twelve months[.]

Utah Code Ann. § 31–41–14(2) (1974) (repealed, 1985 Utah Laws ch. 242, § 58).[3] Under this provision, if an insurance company issued an automobile policy for a term of less than one year, the policy was nonetheless treated as though written for a term of one year. Accordingly, the expiration date of Godoy's policy, as required by § 31–41–14, was November 7, 1984 rather than May 15, 1984. Consequently, the policy could not automatically terminate upon the nonpayment of a premium installment due on May 15.

### III. EFFECTIVE CANCELLATION

As the premium payment in question was not a "renewal" payment due at the end of the policy's actual term, the only way for Mid–Century to cancel the policy prior to November 7, 1984 was to comply with the statutory provisions on cancellation. Section 31–41–16(1) provided that "[w]here cancellation is for nonpayment of premium, at least ten days' notice of cancellation accompanied by the reason therefor must be given." Utah Code Ann. § 31–41–16(1) (1974) (repealed, 1985 Utah Laws ch. 242, § 58).

In this regard, Mid–Century, falling back from its position that the policy expired automatically on May 15, claims alternatively that its agent mailed notice of cancellation to Godoy advising him that the policy would be cancelled for nonpayment of premium on May 15, 1984 if the payment was not received prior to that time. Mid–Century concedes, however, that the precise date

the notice of cancellation was given is not established in its moving papers. Instead, it relied on Prematic's usual practice of mailing notice of cancellation "during the first few days" of the month to establish that it complied with the statutory requirements for cancellation.

The difficulty with Mid–Century's position is twofold. First, there is no evidence the notice in this case was sent in a manner consistent with Prematic's usual practice. Second, the phrase "first few days" in May is a vague one. May 6 and May 7 might well be regarded as being among "the first few days" in May. However, if the notice was given on one of those days it clearly would not be effective to cancel the policy on May 15. Indeed, May 8 might be regarded as one of "the first few days" in May. But if the notice was given then, cancellation would not have been effective until after the accident in this case and Godoy would be entitled to coverage.

### IV. CONCLUSION

Absent a more precise date of mailing, we are unable to determine whether notice was given consistent with the strict statutory requirements for cancellation. Since there is a genuine issue of material fact as to when the notice was given, we must reverse the summary judgment and remand for trial or such other proceedings as may be appropriate.

BILLINGS and GARFF, JJ., concur.

---

3. The new insurance code apparently contains no similar provision. *See* Utah Code Ann. § 31A–21–303(2)(a) (1987); 4A Utah Code Ann., Appendix A at 809 (1986).